METROPOLITAN ALLIANCE OF POLICE, Petitioner-Appellant, v. STATE OF ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL, *et al.*, Respondents-Appellees.

First District (3rd Division)    No. 1—02—0960

Opinion filed December 24, 2003.

Robert C. Bateson and Joseph R. Mazzone, both of Schenk, Duffy, McNamara, Phelan, Cary & Ford, Ltd., of Joliet, for appellant.

Lisa Madigan, Attorney General (Mary P. Kerns, Assistant Attorney General, of counsel), and Jacalyn J. Zimmerman, of Illinois Local Labor Relations Board, both of Chicago, for appellees.

JUSTICE HALL delivered the opinion of the court:

The Metropolitan Alliance of Police, Cook County Sheriff's Correctional Officers Chapter 222 (Petitioner-Union), seeks direct review of an administrative decision and order of the Local Panel of the Illinois State Labor Relations Board (Board), finding that Petitioner-Union violated section 10(b)(1) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(b)(1) (West 2000)), by threatening not to process any further grievances on behalf of Joe E. Cunigan and refusing to pursue his suspension grievance to arbitration.

On appeal, Petitioner-Union contends that: (1) the Board's action in reversing the administrative law judge's partial dismissal of Cunigan's unfair labor practice charge was clearly erroneous; (2) the Board's decision and order was premised on an improper standard of union animus; and (3) the Board's imposed remedy was in contravention of applicable statutory standards. For the reasons that follow, we affirm the Board's decision and order.

## FACTUAL BACKGROUND

The facts giving rise to this appeal are not in dispute. Cunigan is a correctional officer who began his employment with the sheriff of Cook County in 1978. On November 16, 1999, Cunigan began circulating a petition among his fellow correctional officers seeking signatures for a bid to have the International Brotherhood of Teamsters, Local 714 (Teamsters), replace Petitioner-Union as the correctional officers' exclusive bargaining representative. Earlier, in December 1998, the

Board had certified Petitioner-Union as the exclusive bargaining representative of the sheriff's correctional officers, thereby supplanting the Teamsters.

On November 18, 1999, two days after Cunigan began soliciting union-member signatures, the executive director of the Cook County department of corrections issued a memorandum to all correctional officers forbidding the officers from soliciting such signatures while on duty or within the perimeter of the Cook County department of corrections. Shortly thereafter, the memorandum was amended to allow correctional officers to solicit signatures within the perimeter of the Cook County department of corrections provided the officers were off duty.

On November 25, 1999, Cunigan was suspended for three days without pay, after he was allegedly observed sleeping on duty. On December 16, 1999, Cunigan and his union steward submitted a grievance at the first step of the five-step grievance process, challenging the three-day suspension on the ground that Cunigan was performing his assigned duties at the precise time he was allegedly observed sleeping. Cunigan's grievance was denied at the first, second, and third steps of the grievance procedure, whereupon he requested his union steward to pursue the grievance to the fourth step. A fourth-step hearing on Cunigan's grievance was conducted and afterwards on June 30, 2000, the grievance was denied, but the imposed suspension was reduced from three days to two days.

On July 20, 2000, Cunigan wrote to Petitioner-Union president, Joseph M. Andalina, requesting that the union pursue his grievance to the fifth step, arbitration. In a letter dated August 4, 2000, Andalina replied in relevant part as follows:

"I am in receipt of your letter regarding your grievance # 99—09—292 and your desire to seek arbitration. The decision not to arbitrate your case was made after review with your Chief Union Steward and assigned attorney. This was based on the allegation of your sleeping on duty and not for your attempt to collect signatures for the Teamsters to de-certify from M.A.P.

M.A.P. does not pursue grievances for individuals who are working for other unions. If you were collecting these signatures for the Teamsters, you were not performing any obvious union duties for this union, which currently represents all of the Correctional Officers. That in and of itself would nullify this union for pursuing any grievances and discipline for you since you were not doing any authorized union duties.

Further, the paperwork submitted by others to your Chief Union Steward was able to lessen your suspension from five (5) days to two (2) days, and his labors demonstrate savings of three suspension days for you.

I am not aware of any evidence rebutting your actions. If you have any, or someone to confirm that you were not sleeping on duty, I will pass the case on to the full M.A.P. Board and they will ultimately decide on the issue as to whether to appeal your case or not. You would have to submit evidence that you were not sleeping and show that your employer actually retaliated against you for your other activities.

I do not vote except in any ties. Send your evidence to either M.A.P. or your Chief Union Steward for further review. I will pass your letter and my answer and comments from your Chief Union Steward to all of our Board members in anticipation of the receipt of your evidence."

Pursuant to its regular procedure, a member of the Petitioner-Union's executive board contacted Cunigan's union steward in order to obtain information regarding the history of the grievance and its subject matter. After reviewing the file on Cunigan's grievance, the executive board initially voted to table the grievance pending receipt of a written statement from Cunigan outlining and explaining the incident that led to his suspension. The executive board, however, ultimately voted against arbitrating Cunigan's grievance, without being in receipt of his written explanatory statement.[1]

As the grounds for its refusal to pursue Cunigan's grievance to arbitration, the executive board cited both the failure of Cunigan to submit a written explanatory statement and the success of the union steward in getting Cunigan's suspension reduced.[2]

On August 23, 2000, Cunigan filed an unfair labor practice charge with the Board, alleging that the Petitioner-Union engaged in an unfair labor practice in violation of section 10(b)(1) of the Act, when the union refused to arbitrate his suspension grievance. In the charge, Cunigan maintained that the Petitioner-Union had refused to arbitrate the grievance in retaliation for his activities in support of a rival union, the Teamsters. Cunigan sought to have his grievance arbitrated or be reimbursed for the two days he was suspended.

On March 27, 2001, a hearing regarding the charge was held before Administrative Law Judge John F. Brosnan. Cunigan offered his own written entries in his logbook along with corresponding confirming

---

[1]Cunigan claimed that he did not submit a statement explaining his version of events leading up to his suspension because he believed that based upon Andalina's letter of August 4, 2000, the executive board would not fairly consider his grievance for arbitration.

[2]The executive board was mistaken as to the level of success achieved, since the duration of the imposed suspension had been reduced from three to two days, rather than from five to two days.

signatures made by the lieutenant and captain who allegedly had observed him sleeping on duty, as evidence to show that at the time he was alleged to have been asleep, he was actually checking on prisoners.[3]

On June 29, 2001, Judge Brosnan issued a recommended decision and order finding that Petitioner-Union had violated section 10(b)(1) of the Act when it threatened not to process grievances filed by Cunigan due to his support of a rival union. However, Judge Brosnan also found that even though Petitioner-Union had intentionally refused to arbitrate Cunigan's grievance, this refusal did not violate Petitioner-Union's duty of fair representation, concluding that there was insufficient evidence establishing that this intentional conduct was done in retaliation for Cunigan's support of a rival union or for any other unlawful reason.

Cunigan filed timely exceptions to Judge Brosnan's recommended decision and order, to which Petitioner-Union filed no response. After reviewing the record and exceptions, the Board issued a written decision and order on March 12, 2002, in which it reversed Judge Brosnan's partial dismissal. *Metropolitan Alliance of Police (Cunigan)*, 18 Pub. Employee Rep. (Ill.) par. 3013, No. L—CB—01—006 (Illinois Labor Relations Board, Local Panel, March 12, 2002). The Board agreed with the Judge's determination that Petitioner-Union's threatened refusal to process grievances filed by Cunigan due to his activities in support of a rival union violated section 10(b)(1) of Act. However, in contrast to the judge, the Board found that Petitioner-Union's decision not to pursue Cunigan's grievance to arbitration also violated section 10(b)(1) of the Act. Petitioner-Union filed a petition for direct administrative review of the Board's decision and order.

## ANALYSIS

### I. Standard of Review

■ Judicial review of decisions of the Board is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000); *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507, 554 N.E.2d 155 (1990)). Judicial review extends to all questions of law and fact presented in the record. *City of Tuscola v. Illinois State Labor Relations Board*, 314 Ill. App. 3d 731, 734, 732 N.E.2d 784 (2000).

---

[3]Judge Brosnan, in footnote 3 of his recommended decision and order, stated that the logbook entries were not the type of "smoking gun" evidence that Cunigan believed them to be, because Cunigan could have entered his entries either before or after he was caught sleeping or the lieutenant and captain could have made an error in recording the entries.

The Board's findings of fact are held *prima facie* true and correct and therefore will be reversed on appeal only if they are against the manifest weight of the evidence. *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647 (2001). The decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Tuscola*, 314 Ill. App. 3d at 734.

The Board's conclusions of law, however, are not entitled to the same deference and we review them *de novo*. *Illinois Fraternal Order of Police*, 319 Ill. App. 3d at 736. Nonetheless, reviewing courts generally accord substantial deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. *County of Cook v. Licensed Practical Nurses Ass'n*, 284 Ill. App. 3d 145, 152, 671 N.E.2d 787 (1996). An agency's statutory interpretation will be rejected if it is unreasonable or erroneous. *City of Tuscola*, 314 Ill. App. 3d at 734.

When mixed questions of law and fact are involved, requiring an examination of the legal effect of a given set of facts, the Board's resolution of such questions will be upheld on review if "reasonable, consistent with labor law[,] and based on findings supported by substantial evidence." *Northwest Mosquito Abatement District v. Illinois State Labor Relations Board*, 303 Ill. App. 3d 735, 742, 708 N.E.2d 548 (1999). Decisions by the Board that involve mixed questions of law and fact will be overturned only if found to be clearly erroneous. *Illinois Fraternal Order of Police*, 319 Ill. App. 3d at 736, citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998).

In the present case, the relevant facts surrounding Cunigan's grievance and the Petitioner-Union's handling of the grievance are undisputed. Here, we must review the decision of the Board to determine whether the Board correctly found that Petitioner-Union committed an unfair labor practice in violation of section 10(b)(1) of the Act, when the union threatened not to process any further grievances on behalf of Cunigan and refused to arbitrate his suspension grievance. Consequently, this case presents a mixed question of law and fact since it involves an examination of the legal effect of a given set of facts. Thus, the Board's decision should be affirmed unless it is found to be clearly erroneous.

## II. Unfair Labor Practice—Section 10(b)(1)

Petitioner-Union first contends that the Board's action in reversing Judge Brosnan's partial dismissal of Cunigan's unfair labor practice charge was against the manifest weight of the evidence. We must reject this contention.

■ Although section 11(a) of the Act allows the Board to appoint a qualified hearing officer or administrative law judge to hear complaints of unfair labor practices (5 ILCS 315/11(a) (West 2000)), the Board retains the discretion to "adopt all, part or none" of an administrative law judge's recommended decision and order depending on the extent to which it is consistent with the record and applicable law. 80 Ill. Adm. Code § 1200.135(b)(4) (2003). In this case, since the Board's decision presents a mixed question of law and fact, our review will focus on whether the decision was clearly erroneous.

Petitioner-Union asserts that the Board incorrectly found that it committed an unfair labor practice in violation of section 10(b)(1) of the Act, when it threatened not to process any further grievances on behalf of Cunigan and refused to arbitrate his suspension grievance. We must disagree.

As previously mentioned, after reviewing the record, exceptions, and Judge Brosnan's recommended decision and order, the Board agreed with the judge's determination that Petitioner-Union's threatened refusal to process grievances filed by Cunigan due to his activities in support of the Teamsters violated section 10(b)(1) of Act.[4] However, in contrast to the judge, the Board found that Petitioner-Union's refusal to arbitrate Cunigan's grievance also violated section 10(b)(1) of the Act. The Board's latter finding was not clearly erroneous.

■ Under section 10(b)(1) of the Act, a labor organization or its agent violates the organization's duty of fair representation if it commits intentional misconduct in representing an employee. 5 ILCS 315/10(b)(1) (West 2000)[5]; *Murry v. American Federation of State, County & Municipal Employees*, 305 Ill. App. 3d 627, 631, 712 N.E.2d 874

---

[4]Section 10(b)(1) of the Act provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents:

(1) to restrain or coerce public employees in the exercise of the rights guaranteed in this Act, provided, (i) that this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein or the determination of fair share payments and (ii) that a labor organization or its agents shall commit an unfair labor practice under this paragraph in duty of fair representation cases only by intentional misconduct in representing employees under this Act[.]" 5 ILCS 315/10(b)(1) (West 2000).

[5]Section 10(b)(1) of the Act was amended by Public Act 86—412, section 1, effective August 30, 1989, to state that only intentional actions of a union could breach its duty of fair representation. *Moore v. Illinois State Labor Rela-*

(1999); *Foley v. American Federation of State, County & Municipal Employees*, 199 Ill. App. 3d 6, 9-10, 556 N.E.2d 581 (1990) (stating that an exclusive bargaining representative commits an unfair labor practice pursuant to section 10(b)(1) of the Act when it fails to fairly represent the interests of all members of a bargaining unit as required by section 6(d) of the Act).[6]

Under section 6(d) of the Act, unions are accorded substantial discretion in deciding whether and to what extent a particular grievance should be pursued. *ATU, Local 241 (Lawrence)*, 14 Pub. Employee Rep. (Ill.) par. 3011, No. L—CB—98—028, at XI—92 (Illinois Labor Relations Board, Local Panel, June 5, 1998). The mere fact that a union does not pursue a charging party's grievance to arbitration is not itself indicative of intentional misconduct.

■ To demonstrate intentional misconduct by a union under section 10(b)(1) of the Act, a charging party must prove by a preponderance of the evidence that: (1) the union's conduct was intentional, invidious and directed at him; and (2) the union's intentional action occurred because of and in retaliation for some past activity by the employee or because of the employee's status (such as race, gender, or national origin), or animosity between the employee and the union's representatives (such as that based upon personal conflict or the employee's dissident union practices). *AFSCME Local 2912 (McGloin)*, 17 Pub. Employee Rep. (Ill.) par. 3001, No. L—CB—99—005, at XI—5 (Illinois Labor Relations Board, Local Panel, October 23, 2000).

■ In order to establish the second element of a section 10(b)(1) violation, the charging party must prove unlawful discrimination. In duty-of-fair-representation cases, to prove unlawful discrimination, the charging party must establish a *prima facie* case by demonstrating by a preponderance of the evidence that: (1) the employee has engaged in activities tending to engender the animosity of union agents or that the employee's mere status, such as race, gender, religion or national origin, may have caused animosity; (2) the union was aware of the employee's activities and/or status; (3) there was an adverse representation action taken by the union; and (4) the union took an adverse action against the employee for discriminatory reasons, *i.e.*, because of

---

*tions Board*, 206 Ill. App. 3d 327, 333, 564 N.E.2d 213 (1990).

[6]Section 6(d) of the Act provides: "Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of all public employees in the unit. Nothing herein shall be construed to limit an exclusive representative's right to exercise its discretion to refuse to process grievances of employees that are unmeritorious." 5 ILCS 315/6(d) (West 2000).

animus toward the employee's activities or status. *AFSCME Council 31 (Robertson)*, 18 Pub. Employee Rep. (Ill.) par. 2014, Nos. S—CB—00—014, S—CA—00—102 cons., at X—102 (Illinois Labor Relations Board, State Panel, February 13, 2002) (hereafter 18 Pub. Employee Rep. (Ill.) par. 2014).

■ To establish the requisite causal connection between the employee's protected activities and the adverse representational action, the employee may submit direct or circumstantial evidence establishing the union's unlawful motive. 18 Pub. Employee Rep. (Ill.) par. 2014, at X—102. Motive is a question of fact; therefore, the Board may infer discriminatory motivation from either direct or circumstantial evidence. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 345, 538 N.E.2d 1146 (1989). Circumstantial evidence is the proof of certain facts and circumstances from which the fact finder may infer other connected facts that usually and reasonably follow according to common experience. *In re Estate of Malbrough*, 329 Ill. App. 3d 77, 82, 768 N.E.2d 120 (2002).

In duty-of-fair-representation cases, circumstantial evidence may include: the timing of the union's adverse action in relation to the protected activity, expressions of hostility toward protected activities, disparate treatment of employees or a pattern of conduct that targets certain employees for adverse representation action, and shifting or inconsistent explanations for the adverse representation action. See *City of Burbank*, 128 Ill. 2d at 345-46.

■ Once the charging party establishes a *prima facie* case, the burden then shifts to the union to demonstrate that it would have taken the same adverse representational action even absent the charging party's participation in the protected activity. 18 Pub. Employee Rep. (Ill.) par. 2014, at X—102. The union can escape liability if it proffers a legitimate explanation for its adverse representational actions and the Board ultimately determines that the explanation is not pretextual.

■ When these principles and standards are applied to the facts in this case, the record indicates that Cunigan successfully established a *prima facie* case that his solicitation of signatures on behalf of the Teamsters was a motivating factor in the executive board's decision not to pursue his grievance to arbitration. First, there is no question that Cunigan was engaged in a protected activity when he solicited signatures on behalf of the Teamsters. Under section 6(a) of the Act, "[e]mployees of the State and any political subdivision of the State *** have, and are protected in the exercise of, the right of self-organization, and may form, join or assist any labor organization *** free from interference, restraint or coercion." 5 ILCS 315/6(a) (West 2000).

Second, there is no question that Petitioner-Union was aware of this activity. Third, there was an adverse representational action taken by Petitioner-Union in that its executive board decided not to pursue Cunigan's grievance to arbitration. Fourth and finally, Cunigan provided circumstantial evidence, in the form of Andalina's letter, demonstrating the existence of a causal connection between Cunigan's participation in a protected activity and the refusal of the executive board to arbitrate his grievance.

For example, in his letter to Cunigan, Andalina states that the decision not to arbitrate the grievance was based on the allegation that Cunigan was caught sleeping on duty and not for his activities in support of the Teamsters. However, in the letter's next paragraph, Andalina states that the union does not pursue grievances for individuals who support rival unions and that Cunigan's collection of signatures supporting the Teamsters nullified the union's obligation to pursue any grievances on his behalf because he was not doing any authorized union duties.

Thus, the language and tenor of Andalina's letter strongly support the Board's conclusion that the animosity expressed in the letter led to or was a reflection of the executive board's decision not to pursue Cunigan's grievance to arbitration. In fact, the Board stated that the statements in the letter constituted "an unprecedented admission of retaliation against an employee for exercising his statutory right to assist the labor organization of his choice."

The evidence also indicates that once Cunigan established his *prima facie* case and the burden shifted to Petitioner-Union to demonstrate that it would have rejected arbitrating Cunigan's grievance even in the absence of the animus expressed toward his activities in support of the Teamsters, Petitioner-Union failed to make such demonstration. For example, Petitioner-Union acknowledges that Andalina's letter expresses animosity in regard to Cunigan's activities on behalf of the Teamsters and concedes that the executive board's decision not to arbitrate Cunigan's grievance was intentional. Petitioner-Union maintains, however, that Andalina did not participate in the process to decide whether Cunigan's grievance would proceed to arbitration and therefore there is insufficient evidence showing that Andalina's animosity influenced the executive board's decision not to arbitrate the grievance. We note, however, that Andalina's letter expressly states, "I will pass your letter and my answer and comments from your Chief Union Steward to all of our Board members in anticipation of the receipt of your evidence." This excerpt clearly indicates that the executive board was given Andalina's letter and was aware of his animosity at the time of its decision not to arbitrate.

In contrast to Petitioner-Union's position, the Board stated that it "must consider the effect of the Union president's [Andalina's] avowed hostility toward Cunigan's support of a rival union upon the executive board's decision-making process." The Board stated that to overcome the blatant animus expressed in Andalina's letter, the executive board would have to demonstrate that it fairly and objectively considered Cunigan's grievance on its merits. Ultimately, the Board determined that the reasons the executive board gave for deciding not to pursue Cunigan's grievance to arbitration were insufficient to establish that the executive board fairly and objectively considered his grievance on its merits. We agree with the Board.

Petitioner-Union claimed that the executive board's decision not to arbitrate Cunigan's grievance was based on his failure to submit a written explanatory statement to the board and on the fact that the union steward had already succeeded in reducing the duration of his suspension. The Board rejected both of these reasons.

In regard to the written explanatory statement, the Board determined that it was reasonable for Cunigan to decide not to submit a statement after reading Andalina's letter, believing that in light of the language and tenor of the letter, the submission of a statement would be futile. Thus, the Board concluded that Cunigan's decision not to submit an explanatory statement was a direct result of Andalina's unlawful actions. The Board also noted that no evidence was ever presented showing that any union official disavowed the statements in the letter or assured Cunigan that the executive board would give his arbitration request unbiased consideration. The Board reasoned that since the executive board's decision not to pursue arbitration was based, in part, on Cunigan's failure to submit an explanatory statement and Cunigan's failure to submit the statement was due to Andalina's animus, then it was actually Andalina's animus that resulted in the union eventually refusing to arbitrate the grievance.

In regard to the union steward's success in reducing the duration of Cunigan's suspension, the Board pointed out that the executive board incorrectly concluded that the suspension had been reduced from five days to two days rather than three days to two days. The Board determined that the executive board's confusion regarding such fundamental facts of Cunigan's case demonstrated that the executive board failed to engage in a full and impartial consideration of the case.

Under the circumstances, we find that Petitioner-Union did not meet its burden of showing by a preponderance of the evidence that the executive board would have declined to arbitrate Cunigan's grievance even absent his dissident union activities on behalf of the Teamsters. Thus, we agree with the Board's finding that the executive

board's refusal to arbitrate Cunigan's grievance rose to the level of intentional misconduct in violation of section 10(b)(1) of the Act.

## III. Appropriate Standard

▉▉▉ Petitioner-Union next contends that the Board's decision was premised on an improper standard of union animus. Specifically, Petitioner-Union maintains that the Board's decision was incorrectly based solely upon the prejudice and animosity expressed in Andalina's letter. We must reject Petitioner-Union's contentions.

As previously mentioned, in duty-of-fair-representation cases, to prove unlawful discrimination, the charging party must establish a *prima facie* case by demonstrating by a preponderance of the evidence that: (1) the employee has engaged in activities tending to engender the animosity of union agents or that the employee's mere status, such as race, gender, religion or national origin, may have caused animosity; (2) the union was aware of the employee's activities and/or status; (3) there was an adverse representation action taken by the union; and (4) the union took an adverse action against the employee for discriminatory reasons, *i.e.*, because of animus toward the employee's activities or status. 18 Pub. Employee Rep. (Ill.) par. 2014, at X—102.

Here, there is no dispute that Cunigan established elements one through three; therefore, our analysis will focus on the fourth element of the *prima facie* case wherein the charging party must establish that a union's adverse representational action was based on animus toward the charging party for his or her participation in a protected activity. Animus may be inferred from such circumstantial evidence as expressed hostility toward a charging party's participation in protected union activities. See *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board*, 175 Ill. App. 3d 191, 197-98, 529 N.E.2d 773 (1988). In this case, the Board was permitted to draw an inference of unlawful motive from Andalina's letter. The Board stated that it "must consider the effect of the Union president's [Andalina's] avowed hostility toward Cunigan's support of a rival union upon the executive board's decision-making process." The Board stated that to overcome the blatant animus expressed in Andalina's letter, the executive board would have to demonstrate that it fairly and objectively considered Cunigan's grievance on its merits.

Petitioner-Union attempts to downplay the statements by Andalina, but the weight of the evidence is for the Board to determine, and its findings must be accepted if supported by substantial evidence. *City of Burbank*, 128 Ill. 2d at 345. In the present case, Andalina's

statements, along with evidence showing that no union official disavowed the statements or assured Cunigan that the executive board would give his arbitration request unbiased consideration, support the Board's conclusion that Cunigan's protected conduct was the motivating factor in the executive board's decision not to arbitrate his grievance. The Board's conclusion is also supported by evidence showing that the executive board incorrectly found that Cunigan's suspension had been reduced from five days to two days rather than three days to two days, and by the executive board's ultimate refusal to arbitrate Cunigan's grievance as reflected in Andalina's letter. Thus, we find that the Board employed the proper standard in making its decision.

## IV. Proper Remedy

■ Finally, Petitioner-Union asserts that the remedy in this case was in contravention of applicable statutory standards. Petitioner-Union did not raise this argument below and therefore it is waived. *Moore v. Illinois State Labor Relations Board*, 206 Ill. App. 3d 327, 337, 564 N.E.2d 213 (1990) (concluding that failure of party to raise an argument in its exceptions to a recommended decision and order waives that argument for review).

Waiver aside, Petitioner-Union's argument must be rejected. The purpose of the Board in fashioning a remedy in a duty-of-fair-representation case is to order a "make-whole" remedy that places the " 'parties in the same position they would have been in had the unfair labor practice not been committed.' " *Paxton-Buckley-Loda Education Ass'n v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 353, 710 N.E.2d 538 (1999), quoting *City of Harvey*, 13 Pub. Employee Rep. (Ill.) par. 2031, No. S—CA—95—079, at X—171 (Illinois State Labor Relations Board, July 7, 1997). Here, the Board did not abuse its discretion by ordering the remedy set forth in this case. See *Paxton-Buckley-Loda*, 304 Ill. App. 3d at 353 (noting that a remedial order of the Board is reviewed under an abuse of discretion standard).

In this case, the Board ordered Petitioner-Union to cease and desist from threatening not to pursue grievances on behalf of Cunigan and from refusing to arbitrate Cunigan's or any other employee's grievance because of his support of a rival labor organization. In addition, the Board ordered Petitioner-Union to make Cunigan whole for the losses he suffered as a result of his two-day suspension. Further, the Board ordered Petitioner-Union to post a notice advising collective bargaining unit members of the Board's decision and of their rights to engage in self-organization, and to form, join, or help unions, and to collectively bargain through a representative of their own choosing.

Finally, the Board ordered Petitioner-Union to notify the Board in writing, within 20 days from the date of the decision and order, of the steps that had been taken to comply with the decision. The record supports the Board's cease and desist order.

For example, in its decision, the Board declared that the statements in Andalina's letter constituted "an unprecedented admission of retaliation against an employee for exercising his statutory right to assist the labor organization of his choice." There was no evidence presented that any union official disavowed the statements or assured Cunigan that the executive board would give his arbitration request unbiased consideration. Under such circumstances, we conclude that the remedy was within the Board's discretion. ·

A union's duty of fair representation arises from its statutory role as the exclusive bargaining agent for its members. *Paxton-Buckley-Loda*, 304 Ill. App. 3d at 349. " '[T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " *Paxton-Buckley-Loda*, 304 Ill. App. 3d at 349, quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 910 (1967).

In the instant case, the record supports the Board's finding that Andalina's animus toward Cunigan's protected conduct directly affected the executive board's decision not to arbitrate Cunigan's grievance. The Board properly exercised its discretion to remedy the effect of the unfair labor practice.

## V. Conclusion

For the aforementioned reasons, we affirm the decision and order of the Local Panel of the Illinois Labor Relations Board.

Affirmed.

SOUTH and KARNEZIS, JJ., concur.