951 N.E.2d 1164 (2011)
351 Ill. Dec. 500
CHICAGO JOINT BOARD, LOCAL 200, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, Petitioner,
v.
ILLINOIS LABOR RELATIONS BOARD, Local Panel, Carmelthia Otis, Delcina Rosado, Christiana Oheari-Enyeazu, Marshall Berry, Gabriel Nwandu, Britten McBride, Ashok Gandhi, Lindon Hampton, Dhirajlal Jagatia, Synthia Miller, Boniface Nwanesi, and Hayan RGVAL, Respondents.
No. 1-10-1497.
Appellate Court of Illinois, First District, Third Division.
June 22, 2011.
*1165 Jacob Pomeranz, Gilbert Feldman, Cornfield & Feldman, Chicago, for petitioner.
*1166 John J. Muldoon, III, Muldoon & Muldoon, LLC, Chicago, for appellee Cook County.
Lisa Madigan, Attorney General (Michael A. Scodro, Solicitor General, Sunil Bhave, Assistant Attorney General, of counsel), for appellee Illinois Labor Relations Board, Local Panel.

OPINION
Justice MURPHY delivered the judgment of the court, with opinion.
¶ 1 Chicago Joint Board, Local 200, Retail, Wholesale and Department Store Union (Local 200), appeals from an order of the Illinois Labor Relations Board, Local Panel (Board), in which it determined that Local 200 committed an unfair labor practice. Local 200 contends that the Board lacked jurisdiction because the unfair labor practice charge was not timely filed, that the evidence does not support the Board's determination that it committed an unfair labor practice, and that the charging parties, Carmelthia Otis, Delcina Rosado, Christiana Oheari-Enyeazu, Marshall Berry, Gabriel Nwandu, Britten McBride, Ashok Gandhi, Lindon Hampton, Dhirajlal Jagatia, Synthia Miller, Boniface Nwanesi, and Hayan Rgval, lack standing. For the reasons that follow, we affirm.

¶ 2 BACKGROUND
¶ 3 At all relevant times, Local 200 was the exclusive representative for all pharmacists at Provident Hospital (Provident), John H. Stroger, Jr., Hospital of Cook County (Stroger), and a number of other facilities that were overseen by the Cook County bureau of health services (County). On June 9, 2000, George Leonard, a pharmacist at Stroger and the president of Local 200, filed a grievance with Provident, in which he alleged that the deputy director for professional affairs at Provident violated the contract between Local 200 and Provident by allowing employees of an independent management group, McKesson, Inc. (McKesson), to perform work formerly performed by members of Local 200.
¶ 4 The matter proceeded to arbitration, and on October 31, 2003, the arbitrator entered an award in favor of Local 200 requiring Provident to "cease and desist from having persons other than Local 200 Pharmacists do pharmacy work at Provident Hospital without prior notice to and negotiations with [Local 200], and to make affected employees whole." In doing so, the arbitrator found that McKesson employees had been performing Local 200 work from June 2000 to the present. The arbitrator directed the parties "to meet and confer over the scope and amount of the remedy" and retained jurisdiction over the dispute until the scope and amount of the remedy were determined.
¶ 5 On September 16, 2005, the County and Local 200 entered into a consent order which provided that the County would pay those employees affected by its violation of its collective bargaining agreement with Local 200 a total not to exceed $375,000 no later than March 19, 2006. Attached to the consent order was a list of the names of the 14 employees found to have been harmed by the County's actions and the amount each affected employee was to receive.
¶ 6 On March 28, 2006, the charging parties filed a charge against Local 200, and the Board investigated the charge and issued a complaint for hearing. The charging parties asserted that Leonard was solely responsible for determining which employees would receive a portion of the arbitration award and for calculating the amount that each employee would receive and alleged that Local 200 violated section 10(b)(1) of the Illinois Public Labor *1167 Relations Act (Act) (5 ILCS 315/10(b)(1) (West 2004)) because Leonard manipulated the distribution of the award to benefit himself and his coworkers at Stroger to the detriment of Provident employees. The charging parties requested the Board provide any and all appropriate relief in accordance with section 11(c) of the Act (5 ILCS 315/11(c) (West 2004)).
¶ 7 Board administrative law judge (ALJ) Sharon Wells conducted a hearing on the matter at which Delcina Rosado, a pharmacist at Provident and a Local 200 member, testified that she was the person who informed Leonard that McKesson employees were doing union work in 2000 and that she testified at the arbitration hearing on the ensuing grievance. After the arbitrator ruled in favor of Local 200, Rosado questioned Leonard regarding the status of proceedings and the monetary award every couple months, and he would say "[i]t's proceeding okay. It takes time. It's going well." Rosado was not asked to participate in a settlement hearing as to the arbitration award and first saw the consent order in March 2006. Neither Leonard nor anyone from Local 200 asked Rosado for information regarding the overtime she may have lost, and she did not submit any such information to the union.
¶ 8 Rosado also testified that at some point she and other pharmacists at Provident supported and voted for Joseph Arrington, who ran against Leonard for Local 200 president and that Leonard would have known that they had supported Arrington because the election was by an open ballot. The Provident pharmacists also complained to Leonard about the 2002-03 contract he had negotiated and forced a revote on the contract.
¶ 9 Britten McBride, a pharmacist at Provident and a Local 200 steward, testified that he made a complaint to Provident administration that a number of Stroger pharmacists were working overtime at Provident without supervision and that his complaint resulted in a temporary revocation of overtime opportunities for Stroger pharmacists.
¶ 10 Carmelthia Otis, a pharmacist at Provident and a Local 200 steward, testified that shortly after the arbitration hearing had ended, Leonard told her that the union had won and asked her, Hilliard Moore, Denise Davis, and Ashok Gandhi for their W-2 forms so he could see how much overtime they had worked from 1999 through 2004 and determine how to divide the arbitration award. Leonard did not ask Otis to provide any information beyond her W-2 form. Otis later learned that she was not going to receive any portion of the arbitration award and that only 2 of the 12 pharmacists who worked at Provident at the time received money from the award.
¶ 11 Otis also testified that she supported and voted for Arrington when he ran against Leonard in an election for Local 200 president in 2001 or 2002. Around that same time, Otis opposed a contract negotiated by the union because she believed it benefitted the pharmacists at Stroger, but not those at the other facilities represented by Local 200, and voted against the contract along with the other Provident pharmacists, causing a revote.
¶ 12 George Leonard testified that beginning in 1997, he and other pharmacists from Stroger began performing overtime work at Provident because there was a backlog of prescriptions at Provident and there was insufficient manpower at that facility to finish the work. However, from 2000 until 2003 or 2004, Stroger pharmacists were not permitted to perform overtime work at Provident because there was no agreement in place for them to do such *1168 work and McKesson employees were doing that work.
¶ 13 Less than 90 days after the entry of the October 31, 2003, arbitration award, Leonard went to the outpatient pharmacy at Provident and announced that Local 200 had won the arbitration and that he needed evidence to help reach a settlement. Leonard asked for the W-2 forms of anyone who felt he or she had been injured and also asked the union stewards to provide him with their W-2 forms from 1999 through 2004 and to determine if anyone else had a claim as to the arbitration award and provide him with their W-2 forms. Leonard made two or three more announcements to that effect, but did not send out any written information or requests regarding the W-2 forms.
¶ 14 Leonard initially determined that 14 pharmacists and technicians were entitled to a portion of the arbitration award because their W-2 forms showed that they made less money in the years after 1999. Leonard used 1999 as a baseline year to determine injury because that was the last year before McKesson employees began doing union work. After Leonard determined which 14 pharmacists and technicians were entitled to a portion of the award based on their W-2 forms, he received statements of income and overtime hours for those employees from the County. While Leonard believed that Provident pharmacists were not prevented from performing overtime work by McKesson employees prior to the arbitration award, two Provident pharmacists did receive a portion of the award because they demonstrated that they had a loss of income during the grievance period.
¶ 15 Leonard further testified that Rosado frequently asked him questions after the arbitration hearing regarding the status of proceedings and that he told her that the union had collected information from people who routinely worked overtime. Since Rosado did not routinely work overtime, he "basically" told her that she would not be receiving a portion of the award. Leonard orally informed Otis that she would not be receiving a portion of the arbitration award in January or February 2006, a few months prior to the disbursement, because her income had increased from 1999. Leonard was aware that Rosado and Otis were unhappy with a contract he had negotiated and that they sought a revote on the contract, but he did not know how people voted because it was done by a secret ballot.
¶ 16 On July 6, 2009, ALJ Wells issued a recommendation decision and order in which she concluded that Local 200, by Leonard, failed in its duty to fairly represent the charging parties in its handling and distribution of the arbitration award. In doing so, ALJ Wells found the testimony of the charging parties' witnesses to be more credible than that of Leonard, who testified that he had given himself one-fourth of the award based on his having worked 2,200 hours of overtime in 1999. ALJ Wells concluded that Local 200 excluded the charging parties from receiving any of the proceeds from the arbitration award in retaliation for their support of Arrington for union president, for voting against a contract he had negotiated, and for complaining about the overtime work Stroger pharmacists were performing at Provident.
¶ 17 Local 200 filed exceptions to the recommended decision and order and a supporting brief, and on May 19, 2010, the Board issued its decision and order, in which it accepted ALJ Wells' recommendation and issued an order to that effect. In doing so, the Board found that ALJ Wells' credibility findings were well supported and that the charge was timely filed because there was no evidence that any of *1169 the charging parties knew, or reasonably should have known, of the complained-of conduct prior to January 2006. On June 2, 2010, Local 200 petitioned this court for review of the Board's decision and order.

¶ 18 ANALYSIS

¶ 19 I. Standards of Review
¶ 20 In reviewing the decision of an administrative agency, this court will review the agency's factual findings to ascertain whether such findings are against the manifest weight of the evidence, review its decisions on questions of law de novo, and review its decisions on mixed questions of law and fact for clear error. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill.2d 200, 210-11, 319 Ill.Dec. 887, 886 N.E.2d 1011 (2008). The Board's determination that a union has committed an unfair labor practice presents a mixed question of law and fact and will be affirmed unless it is found to be clearly erroneous. Metropolitan Alliance of Police v. State of Illinois Labor Relations Board, Local Panel, 345 Ill. App.3d 579, 586, 280 Ill.Dec. 889, 803 N.E.2d 119 (2003). An administrative agency's decision is clearly erroneous where the record leaves the reviewing court with the definite and firm conviction that a mistake has been made. Cinkus, 228 Ill.2d at 211, 319 Ill.Dec. 887, 886 N.E.2d 1011.

¶ 21 II. Timely Filing
¶ 22 Local 200 first contends that the Board lacked jurisdiction because the charge was not filed within six months of the alleged unfair labor practice. No complaint of an unfair labor practice may issue based upon an unfair labor practice occurring more than six months prior to the filing of a charge with the Board unless the aggrieved party did not reasonably have knowledge of the alleged unfair labor practice. 5 ILCS 315/11(a) (West 2004). The six-month filing period begins to run when the charging party learns or has notice of the actions which constitute the alleged unfair labor practice. Moore v. Illinois State Labor Relations Board, 206 Ill.App.3d 327, 335, 151 Ill.Dec. 236, 564 N.E.2d 213 (1990).
¶ 23 Local 200 asserts that the charge was not timely because it was filed on March 28, 2006, more than six months after September 16, 2005, when Leonard entered into the consent order with the County that provided the County would pay affected employees $375,000. However, the record shows that Rosado testified that she first learned of the consent order in March 2006 and that Leonard testified that he informed Otis that she would not be receiving a portion of the award in January or February 2006. In addition, Local 200 has not presented any evidence showing that any of the charging parties were aware of the execution of the consent order more than six months prior to March 28, 2006. As such, we determine that the Board's conclusion that the charge was timely filed because "[t]here is no evidence that any of the Charging Parties knew or reasonably should have known of the complained of conduct prior to January 2006" is not clearly erroneous.
¶ 24 Local 200 maintains, however, that Leonard provided the charging parties with notice of the consent order when it was executed by directing them, either personally or through the union stewards, to provide him with their W-2 forms if they believed they had been adversely affected by the County's conduct. The record shows that Leonard testified that he requested the W-2 forms within 90 days of the entry of the arbitration award on October 31, 2003, and that the W-2 forms were used to determine which employees were entitled to a portion of the award as set *1170 forth in the attachment to the consent order. Thus, Leonard's request for W-2 forms could not have provided the charging parties with notice of the consent order because he requested the forms before the order existed and before he determined which employees would be receiving a portion of the award.
¶ 25 Local 200 also maintains that the Board should have applied the "small plant" doctrine in this case to impute knowledge of the consent order to the charging parties. An employer may be charged with knowledge of union activities without the need for direct proof where the setting is a "small plant" because an employer at a small facility is likely to notice activities at the plant due to the closer working environment between management and labor. Rockford Township Highway Department v. Illinois State Labor Relations Board, 153 Ill.App.3d 863, 881, 106 Ill.Dec. 683, 506 N.E.2d 390 (1987). Local 200 does not cite any authority in which the "small plant" doctrine has been applied to impute knowledge of the actions of the employer to an employee. In the present case, there is no evidence that anyone other than Leonard had knowledge of the award. Further, there is no evidence that Leonard engaged in any activity regarding the consent order that the charging parties would have been likely to notice due to the close working environment prior to January or February 2006, when he informed Otis that she would not be receiving a portion of the award. The evidence supports ALJ Wells' finding that the charging parties' testimony as to lack of knowledge was credible.

¶ 26 III. Unfair Labor Practice
¶ 27 Local 200 next contends that the evidence does not support the Board's determination that it committed an unfair labor practice. A union or its agent commits an unfair labor practice and violates its duty of fair representation if it commits intentional misconduct in representing an employee. 5 ILCS 315/10(b)(1) (West 2004); Metropolitan Alliance of Police, 345 Ill.App.3d at 587-88, 280 Ill.Dec. 889, 803 N.E.2d 119. To establish intentional misconduct, the charging party must prove by a preponderance of the evidence that (1) the union's conduct was intentional and directed at the charging party and (2) that the intentional action occurred because of and in retaliation for some past activity by the employee or because of animosity between the employee and the union's representatives. Id. at 588, 280 Ill.Dec. 889, 803 N.E.2d 119. To establish the second element of intentional misconduct, the charging party must prove unlawful discrimination by demonstrating by a preponderance of the evidence that the employee has engaged in activities tending to engender the animosity of union agents, the union was aware of the employee's activities, there was an adverse representation action taken by the union, and the union took an adverse action against the employee for discriminatory reasons. Id. at 588-89, 280 Ill.Dec. 889, 803 N.E.2d 119.
¶ 28 ALJ Wells and the Board determined that the evidence in this case showed that Leonard excluded the charging parties from receiving a portion of the arbitration award due to their support of Joseph Arrington for union president, disapproval of a contract he had negotiated, and complaints regarding the work of Stroger pharmacists. Local 200 asserts, however, that the charging parties failed to prove unlawful discrimination because there is no evidence that Leonard was aware that they had engaged in any of the activities that allegedly engendered his animosity and that ALJ Wells and the Board erred by inferring such knowledge by applying the "small plant" doctrine.
*1171 ¶ 29 The record shows, however, that Rosado and Otis testified that they and the other pharmacists at Provident supported and voted for Arrington for Local 200 president in 2001 or 2002 and that Rosado testified that Leonard would have known that they had supported Arrington because the election was by an open ballot. Rosado and Otis also testified that the Provident pharmacists complained to Leonard about the 2002-03 contract he had negotiated and voted against the contract, causing a revote, and that Leonard testified that he was aware that Rosado and Otis were unhappy with the contract and sought a revote. The evidence thus shows that Leonard was aware that Provident employees supported Arrington for president and disapproved of a contract he had negotiated.
¶ 30 In addition, ALJ Wells and the Board did not clearly err by applying the "small plant" doctrine in determining that Leonard was aware that McBride had complained to Provident administration about the work of Stroger pharmacists where only 12 pharmacists worked at Provident at the time and the complaint resulted in a temporary revocation of overtime opportunities for Stroger pharmacists, including Leonard. We thus determine that the Board's factual finding that Leonard was aware that the charging parties had supported Arrington in an election for president against him, disapproved of a contract he had negotiated, and complained to Provident administration regarding the work of Stroger pharmacists is not against the manifest weight of the evidence.
¶ 31 Furthermore, to the extent Local 200 asserts in its reply that it has demonstrated that it would have taken the same action regardless of the alleged discrimination, it has waived this argument by failing to raise it in its appellant's brief (Ill.S.Ct. R. 341(h)(7) (eff. July 1, 2008) ("[p]oints not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing")) or cite to any supporting authority (id.; Hirsch v. Optima, Inc., 397 Ill.App.3d 102, 109, 336 Ill. Dec. 338, 920 N.E.2d 547 (2009)).

¶ 32 IV. Standing
¶ 33 Local 200 further contends that the "charging parties lack standing because they are not members of the class created by the arbitrator to be recipients of the settlement proceeds: the `affected employees [with] losses occasioned by the violations.'" In support of that contention, Local 200 cites to Metropolitan Alliance of Police, 345 Ill.App.3d at 588, 280 Ill.Dec. 889, 803 N.E.2d 119, for the proposition that a charging party must establish that the union's conduct was intentional and directed at the charging party to establish a claim under section 10(b)(1) of the Act (5 ILCS 315/10(b)(1) (West 2004)) and asserts that its conduct was not directed at the charging parties in this case. Although Local 200 contended in the title of this portion of its brief and reply that the charging parties lacked standing and once stated in its brief that the charging parties "have no standing to bring this charge," it did not cite to any authority in its brief or reply regarding standing. Thus, we understand the assertion of Local 200 to be that the charging parties have failed to establish intentional misconduct because they did not prove that its actions were intentional and directed at them. To the extent Local 200 intended to contend that the charging parties lack standing, it has waived that issue by failing to cite any authority in support of that claim. Ill. S.Ct. R. 341(h)(7) (eff. July 1, 2008); Hirsch, 397 Ill.App.3d at 109, 336 Ill.Dec. 338, 920 N.E.2d 547.
*1172 ¶ 34 The record shows that Leonard's conduct was intentional and directed at the charging parties where Leonard determined which employees were to receive a portion of the arbitration award and the charging parties did not receive any portion of that award. We therefore conclude that the Board's determination that Local 200 committed an unfair labor practice by failing to fairly represent the charging parties is not clearly erroneous.

¶ 35 CONCLUSION
¶ 36 Accordingly, we affirm the decision and order of the Board.
¶ 37 Affirmed.
Presiding Justice QUINN and Justice NEVILLE concurred in the judgment and opinion.