NOTICE

Decision filed 06/29/10, corrected 08/20/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0545

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE VILLAGE OF MARYVILLE,         ) Petition for the Review of
                                     ) an Order of the Illinois Labor
       Petitioner,              ) Relations Board, State Panel.
                                     )
v.                                     ) No. S-UC-06-064
                                   )
THE ILLINOIS LABOR RELATIONS     )
BOARD, STATE PANEL, and ILLINOIS   )
FRATERNAL ORDER OF POLICE       )
LABOR COUNCIL,                )
                                 )
       Respondents.           )

_____

JUSTICE SPOMER delivered the opinion of the court:

The Village of Maryville (Maryville) appeals from the order of the Illinois Labor Relations Board, State Panel (the Board), dated September 30, 2008, that granted the petition of the Illinois Fraternal Order of Police Labor Council (the Council) for unit clarification of the existing bargaining unit and certified the Council as the exclusive representative for all full-time sergeant-ranked police officers employed by Maryville. On appeal, Maryville contends that the Board's decision was in error, arguing that because the sergeant-ranked police officers are deemed supervisors pursuant to section 3(r) of the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/3(r) (West 2006)), they cannot be included in the same bargaining unit as their subordinate patrol officers. We reverse and remand with directions that the Board enter an order denying the Council's petition for unit clarification.

## FACTS

The Council filed a petition for unit clarification with the Board on March 24, 2006, seeking to include all sergeants employed by Maryville's police department (the department)

1

in the existing bargaining unit. At the time of the petition, the existing bargaining unit was composed of full-time Maryville police officers below the rank of sergeant, including detectives and patrol officers. On April 12, 2006, Maryville filed an objection to the petition, contending that the sergeants are supervisors within the meaning of section 3(r) of the Act (5 ILCS 315/3(r) (West 2006)) and thus could not be included in an expanded bargaining unit with their subordinate patrol officers.

The Board held a hearing on the petition on May 17, 2007. Richard Schardan testified as follows. He has been the chief of the department since 2003. As chief, he is the top-ranking officer. At the time of the hearing, the department employed two sergeants, eight patrol officers, and one detective. The sergeants are considered the command staff for the department. The department's policies-and-procedures manual and the department's general orders define the duties of sergeants and patrol officers. Unlike patrol officers, sergeants are assigned the duties of enforcing regulatory measures, supervising personnel, and temporarily relieving subordinates that exhibit improper behavior. Sergeants are required by the terms of the manual to assign work activities and projects to the patrol officers and to assist in planning and organizing functions, such as assisting in the analysis of beat organization and design, participating in the development of a budget, and forecasting additional funds for equipment and staffing. Finally, the manual contemplates that a sergeant would review union agreements and interpret the administration of their provisions.

The chief testified that sergeants are the supervisors for all patrol officers, each managing their own squad. They work from 4 p.m. until 4 a.m. The chief is off duty for the majority of their shifts, as he typically works a daytime shift until 5:15 p.m. When the chief is on leave, the sergeants attend Maryville board meetings to represent the department in his stead. The sergeants review all vacation, personal, and sick leave requests. If the sergeant approves a request, the chief will review the approval. However, if the sergeant denies the

request, the chief does not review the denial. The sergeants also assist the chief in developing new policies and procedures within the department, such as performance evaluations. They can authorize overtime and call officers to come in when additional personnel are needed.

According to the chief, the sergeants use independent judgment in making patrol assignments. They also have the authority to impose or recommend discipline for any patrol officer, including the power to issue oral and written reprimands or warnings. They review and approve the reports of the patrol officers, requiring them to correct or make additions to the reports when the sergeant deems that to be necessary. The sergeants conduct performance evaluations of the patrol officers, which have, in the past, been forwarded to the village personnel committee. At the time of the hearing, the chief, with the help of one of the sergeants, was in the process of developing a more streamlined performance-evaluation process for the department. Also, the sergeants are responsible for scheduling all training sessions for the patrol officers.

Further, the chief testified that he is concerned that if the sergeants become members of the collective bargaining unit, they would be put in a conflict-of-interest situation when it came to disciplining patrol officers and maintaining the confidentiality of command staff discussions regarding personnel issues. The sergeants report to the chief on particular management topics, such as counseling sessions they have had with patrol officers, via e-mail. As an example, the chief stated that one of the sergeants e-mailed him about a counseling session he had with a patrol officer who was spending duty time at a woman's apartment.

On cross-examination, the chief testified that at the time of the hearing, the department was involved in negotiations with the Council over a contract, so there was no grievance procedure in effect. The chief also clarified that performance evaluations are filed

in the personnel files for the patrol officers. These are taken into consideration by the fire and police board when determining promotions.

Tom Lange testified that he is a sergeant employed by the department. Until 2001, he served as a patrol officer. Since becoming a sergeant, his duties and responsibilities have changed because he now supervises a squad of officers. His testimony regarding his duties and responsibilities corroborated that given by the chief. He directs officers to engage in special assignments when warranted. He occasionally directs patrol officers to assist other communities pursuant to mutual aid agreements. He makes independent decisions regarding which officers to send to which training sessions. He has had to resolve conflicts and disputes between patrol officers on his squad regarding assignments and other personnel matters. He can make an independent determination regarding whether to hold a patrol officer over his shift and can issue disciplinary action against patrol officers by oral or written reprimand. He also knows he has the power to relieve officers from duty as a form of discipline, although he had not yet exercised that authority. He has the authority to call additional officers to duty when needed and conducts annual performance evaluations of the patrol officers on his squad. He also has the authority to approve or unilaterally reject requests for leave. Mr. Lange testified that he is concerned that his duties as supervisor may be in conflict with his inclusion in the collective bargaining unit, especially in the area of discipline.

Larry Gulledge testified that he has been the mayor of Maryville since 1993. He testified that Maryville is one of the fastest-growing communities in Southern Illinois, growing 27% from 2000 to 2003. Maryville has filed the paperwork to administer a special census, and Mayor Gulledge estimated that the population has grown from 5,905 residents to approximately 7,300 residents since 2003. Mayor Gulledge expects to hire more police officers in the future. When the chief is absent or unavailable, the sergeants communicate

4

with the mayor on behalf of the department and have been involved in confidential communications with the mayor regarding issues and concerns about Maryville crime and suspects.

Following testimony and argument, the administrative law judge (the ALJ) took the petition under advisement. Before rendering a decision, the ALJ who conducted the hearing left the Board's employ and the case was reassigned. The reassigned ALJ issued a recommended decision and order on the petition on June 16, 2008. The ALJ recommended that the Council unit be clarified to include the employees in the rank of "sergeant" in the collective bargaining unit. On July 3, 2008, Maryville filed exceptions to the ALJ's recommended decision and order. On September 30, 2008, the Board issued a decision adopting the ALJ's recommendation and ordering the executive director of the Board to certify the Council as the exclusive representative for all full-time sworn police officers in the rank of sergeant who are employed by the department. On October 28, 2008, Maryville filed a petition for review in this court pursuant to Illinois Supreme Court Rule 335 (155 Ill. 2d R. 335).

ANALYSIS

The judicial review of administrative decisions of the Board is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) and extends to all questions of law and fact presented in the record. *Metropolitan Alliance of Police v. State of Illinois Labor Relations Board, Local Panel*, 345 Ill. App. 3d 579, 585 (2003). "When mixed questions of law and fact are involved, requiring an examination of the legal effect of a given set of facts, the Board's resolution of such questions will be upheld on review if 'reasonable, consistent with labor law[,] and based on findings supported by substantial evidence.' " *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 586 (quoting *Northwest Mosquito Abatement District v. Illinois State Labor Relations Board*, 303 Ill. App. 3d 735,

5

742 (1999)). "Decisions by the Board that involve mixed questions of law and fact will be overturned only if found to be clearly erroneous." *Metropolitan Alliance of Police*, 345 Ill. App. 3d at 586. Here, the testimony of Chief Schardan, Sergeant Lange, and Mayor Gulledge, as well as the documentary evidence presented by Maryville, are undisputed. We must review the decision of the Board to determine whether the facts presented warrant the result that was reached. Accordingly, we will review the Board's decision to determine whether it was clearly erroneous.

The Act provides a system of collective bargaining for those public employees and employers who fall within its scope. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 505 (1990). With respect to police officers, the Act provides that a bargaining unit determined by the Board may not consist of both supervisors and nonsupervisors. 5 ILCS 315/3(s)(1) (West 2006). "The exclusion of supervisory employees from bargaining units ensures employers that pro[]union bias will not impair the supervisor's ability to apply the employer's policies to subordinates according to the employer's best interests." *City of Freeport*, 135 Ill. 2d at 506. Section 3(r) of the Act defines a "supervisor" as follows:

" 'Supervisor' is an employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature[] but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding. In addition, in determining supervisory status in police

6

employment, rank shall not be determinative. The Board shall consider, as evidence of bargaining unit inclusion or exclusion, the common law enforcement policies and relationships between police officer ranks and certification under applicable civil service law, ordinances, personnel codes, or Division 2.1 of Article 10 of the Illinois Municipal Code, but these factors shall not be the sole or predominant factors considered by the Board in determining police supervisory status." 5 ILCS 315/3(r) (West 2006).

Thus, section 3(r) of the Act creates a three-part test for determining the supervisory status of police officers. Police officers will be considered supervisors if they "(1) perform principal work substantially different than their subordinates; (2) have authority in the interest of the employer to perform one or more of 11 enumerated supervisory functions, or to effectively recommend such action; and (3) consistently use independent judgment in performing or recommending the enumerated actions." *City of Freeport*, 135 Ill. 2d at 512. "The Act specifically states that, in police employment, supervisory employees are not required to meet the fourth part of the Act's supervisory definition. [Citation.] Thus, police employees may qualify as supervisors even if they do not devote a preponderance of their employment time exercising their supervisory authority." *City of Freeport*, 135 Ill. 2d at 512.

Here, the Board determined that the sergeants employed by the department did perform work substantially different from that of the patrol officers, meeting part one of the test. However, the Board found that the sergeants did not have the authority to perform one or more of the enumerated supervisory functions. In reaching this conclusion, the Board found that the village failed to provide evidence of specific instances where the sergeants disciplined, directed, or adjusted the grievances of the subordinate patrol officers in a manner that shows an impact on the terms and conditions of their employment. We find this conclusion to be clearly erroneous because it improperly assigns dispositive weight to the

7

number of times the sergeants have exercised their supervisory authority.

As explained by the Illinois Supreme Court in *City of Freeport*, 135 Ill. 2d at 517, supervisors are excluded from bargaining units to avoid the conflict of interest that arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates. "The potential for a conflict of interest lies in the supervisor's *authority* to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation." (Emphasis in original.) *City of Freeport*, 135 Ill. 2d at 518. "[I]t is the existence of the supervisory authority *** that is essential, not the amount of time such authority is exercised." *City of Peru v. Illinois State Labor Relations Board*, 167 Ill. App. 3d 284, 292 (1988). Whether or not the sergeants have found it necessary to exercise authority frequently does not destroy the existence or effectiveness of that authority. *City of Peru*, 167 Ill. App. 3d at 292.

The dissent's reliance on *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508 (1992), is misplaced. Nowhere in that case does the Illinois Supreme Court hold, as the dissent states, that "the mere ability to perform or to effectively recommend on one or more of the supervisory indicia is not enough to support a finding that the sergeant has actual supervisory status." Slip op. at 11. To the contrary, the Illinois Supreme Court limited its analysis in *Chief Judge of the Circuit Court* to a determination of whether independent judgment was required in discharging the supervisory functions. 153 Ill. 2d at 516. In making that determination, the supreme court looked at the authority of the position involved under the policies of the probation department, not to whether there were specific instances. *Chief Judge of the Circuit Court*, 153 Ill. 2d at 517. Because the policies required that position to exercise its authority in a routine manner, the supreme court affirmed the Board's determination that they

8

were not supervisors within the meaning of the Act. *Chief Judge of the Circuit Court*, 153 Ill. 2d at 522.

Here, the Board conducted a quantitative, rather than a qualitative, analysis of the sergeants' authority to direct and discipline the patrol officers, and in so doing, it failed to identify those points where the sergeants' supervisory obligation to Maryville and the department could conflict with their participation in the same union activity in which the patrol officers that they supervise participate. See *City of Freeport*, 135 Ill. 2d at 518. First, the record is clear that the sergeants review the patrol officers' requests for time off work, including vacation and personal leave. If the sergeants deny the patrol officers' requests, the denials are not sent to the chief for review. Only the approval of these requests is sent to the chief for approval. The sergeants have the sole authority and the independent judgment to deny these requests. In addition, the sergeants have written authority, via the policies-and-procedures manual, to issue oral and written reprimands, conduct oral and written performance evaluations, and memorialize counseling sessions with patrol officers, which are placed in the personnel file. It is axiomatic that this documentation of personnel issues has the potential to be used in future disciplinary proceedings and promotional considerations involving that employee.

The authority to deny leave, issue written reprimands, and conduct performance evaluations indicates an authority to influence the terms and conditions of employment, as well as the use of independent judgment in determining when and how to exercise these functions. The potential for a conflict of interest is apparent. Because the presence of even one indicium of supervisory authority accompanied by independent judgment is sufficient to support a finding of supervisory status (see *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 114 (2008)) and the above-referenced indicia represent the sergeants' influence or control of personnel decisions in areas likely to fall

9

within the scope of union representation (see *City of Freeport*, 135 Ill. 2d at 518), the Board's decision was clearly erroneous.

CONCLUSION

For the foregoing reasons, the order of the Board, dated September 30, 2008, which certified the Council as the exclusive representative for all full-time sergeant-ranked police officers employed by the department is reversed, and the cause is remanded with directions that the Board enter an order denying the petition for unit clarification.

Reversed; cause remanded with directions.

STEWART, J., concurs.

JUSTICE CHAPMAN, dissenting:

I dissent from the majority's opinion.

The majority determines that the Village of Maryville adequately established the supervisory power of its two sergeants, Sergeant Lange and Sergeant Howe, finding fault with the Board for not relying upon the evidence of the quality of the supervisory powers held by the sergeants as opposed to the quantity. In reversing the focus to the quality of the supervisory powers, the majority seizes upon isolated case language to support this theory. See *City of Peru v. Illinois State Labor Relations Board*, 167 Ill. App. 3d 284, 521 N.E.2d 108 (1988). The case at issue states that the amount of time the supervisory authority is exercised is not as important as the existence of supervisory authority. *City of Peru*, 167 Ill. App. 3d at 292, 521 N.E.2d at 114. In an effort to overturn the decision of an administrative agency board, charged with the responsibility to interpret its own regulations, the majority ignores extensive case law on this exact topic, plus a holding of the Illinois Supreme Court.

10

Contrary to the majority's classification of its decision as a qualitative analysis, the majority opinion substitutes its own definition of the supervisory requirements for the definition utilized by the administrative agency charged with the analysis of its own regulations. While we have the power to review decisions of administrative boards, the majority goes too far. In light of the existing law on this topic, the Board's decision was not clearly erroneous.

By upholding the decision and analysis of the Illinois State Labor Relations Board, the supreme court confirmed that the mere ability to perform or to effectively recommend on one or more of the supervisory indicia is not enough to support a finding that the sergeant has actual supervisory status. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 607 N.E.2d 182 (1992). More important than the ability to supervise is the supervisor's actual exercise of this authority with the required independent judgment "sufficient to indicate supervisory status." *Chief Judge of the Circuit Court*, 153 Ill. 2d at 516, 607 N.E.2d at 186.

The majority seems to believe that written statements of supervisory authority are sufficient to establish that supervisory authority. In an effort to circumvent a village or other hiring entity from simply inserting supervisory powers into an employee's policies-and-procedures manual to thwart the inclusion of those employees into a collective bargaining unit, the courts have narrowly construed exclusions based upon alleged supervisory authority. See *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 364-65, 522 N.E.2d 1219, 1223-24 (1988); *County of Kane v. Carlson*, 116 Ill. 2d 186, 196-98, 507 N.E.2d 482, 485 (1987); *Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board*, 143 Ill. App. 3d 898, 907, 493 N.E.2d 1130, 1136 (1986).

A more thorough analysis of the grounds of supervisory authority relied upon by the Village of Maryville belies the required actual exercise of the "supervisory authority." As

11

set forth in greater detail in this dissent, the criteria for qualifying as an Illinois Public Labor Relations Act "supervisor" must be met. 5 ILCS 315/3(r) (West 2006). If the Village of Maryville is not able to establish facts supporting its claim that its sergeants qualify as supervisors under the Act, the employees at issue should not be found to be supervisors. See *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 506, 554 N.E.2d 155, 159 (1990).

In this case, specific instances of the exercise of supervisory control were limited. Sergeant Lange testified that he has directed patrol officers to assist other communities under a mutual aid agreement with area municipalities, including Troy, Collinsville, and Glen Carbon. Sergeant Howe has called in extra officers to work without permission from the chief of police when there were storms that caused issues within the village. Sergeant Lange testified that he has held officers over to the next shift without seeking approval from the chief of police. Sergeant Howe sent an e-mail to the officers informing them of a mandatory speed enforcement detail on Route 159. Chief Schardan testified about an incident in which Sergeant Howe counseled a patrol officer for spending two hours during his shift at the home of the officer's girlfriend. Sergeant Howe explained that this behavior was unacceptable and that the behavior could result in a termination for cause because this was a second offense. Sergeant Howe sent an e-mail to Chief Schardan detailing his conversation with the patrol officer in question.

The majority points to the fact that the supervisors "review the patrol officers' requests for time off work, including vacation and personal leave," and that if the officers deny any request for leave, that denial is final and cannot be reviewed. Slip op. at 9. Additionally, the majority notes that the sergeants have written authority, "via the policies-and-procedures manual, to issue oral and written reprimands, conduct oral and written performance evaluations, and memorialize counseling sessions with patrol officers, which are placed in

12

the personnel file." Slip op. at 9. The majority states that it is self-evident that the potential exercise of these evaluative and reprimand powers could be used in future disciplinary proceedings and promotional considerations.

Again, while the sergeants may maintain a written ability to do these things, that ability alone is insufficient to establish supervisory authority. Case law generated by the board of this very agency could not be clearer. Unless there are actual examples of the exercise of the supervisory authority, the mere written "power" is insufficient. *Hawk*, 20 Pub. Employee Rep. (Ill.) par. 9, No. S-CA-01-198 (ILRB, State Panel, August 21, 2003). Even oral reprimands, as were referenced by Sergeant Howe, must be documented and must serve as the basis for future disciplinary action–to be a part of a progressive system of discipline. *Metropolitan Alliance of Police v. Illinois Labor Relations Board, State Panel*, 362 Ill. App. 3d 469, 478-79, 839 N.E.2d 1073, 1081-82 (2005).

In the hearing, the Village of Maryville agreed that the sergeants in this case have no final authority with respect to 3 of the 11 statutory indicia of supervisory authority–the authority to hire, to transfer, and to promote. With respect to one or more of the other eight statutory indicia, the Village of Maryville bore the burden of establishing that the sergeants had the authority to perform or effectively recommend on those categories of supervisory powers and, in fact, consistently exercise that authority with independent judgment. See *City of Freeport*, 135 Ill. 2d at 512, 554 N.E.2d at 162. In this case, the Village of Maryville proceeded on the basis that the sergeants exercised supervisory authority with respect to 3 of the 11 statutory indicia: discipline, grievance adjustment, and direction.

To constitute discipline as required within the meaning of the Illinois Public Labor Relations Act, the verbal reprimands must impact a subordinate's job status or the actual terms of employment. *Metropolitan Alliance of Police, Chapter No. 4*, 19 Pub. Employee Rep. (Ill.) par. 125, No. S-RC-01-063 (ILRB, State Panel, June 30, 2003). Documented oral

reprimands will only constitute the supervisory authority to discipline if the supervisor has the discretion to decide whether or not to issue the reprimand and actually documents the reprimand *and if the reprimand can serve as the basis for future disciplinary action–actually functioning as a part of the employer's overall progressive disciplinary system*. *Metropolitan Alliance of Police*, 362 Ill. App. 3d at 478-79, 839 N.E.2d at 1081-82; *Village of Hinsdale*, 22 Pub. Employee Rep. (Ill.) par. 176, No. S-RC-06-037 (ILRB, State Panel, December 13, 2006).

The only case cited by the Village of Maryville as supportive of its claim that the single oral counseling session could serve to establish that its sergeants have supervisory authority is not addressed in the majority's opinion. The village cites to *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 118, 895 N.E.2d 1082, 1090 (2008), which I find distinguishable. In *Village of Hazel Crest*, the court found that it was not necessary to prove a set number of documented exercises of the disciplinary supervision in order to meet the test as set forth in *City of Freeport*. *Village of Hazel Crest*, 385 Ill. App. 3d at 118, 895 N.E.2d at 1090. However, the Village of Hazel Crest actually did have documented evidence that the "supervisory" employees at issue recommended discipline of a subordinate officer on two occasions and that in one of those cases, following an independent review, the disciplinary recommendation of the supervisor was acted upon. *Village of Hazel Crest*, 385 Ill. App. 3d at 118, 895 N.E.2d at 1090.

In this case, the evidence only established that an officer had "counseled" another officer about his being at the home of his girlfriend while on duty. An e-mail documenting the counseling session was prepared and sent. Although the evidence tended to indicate that a copy of the written memorialization of the counseling session was included in the officer's file, there was no evidence that the memo about the counseling session could ever have any bearing on the terms and conditions of that patrol officer's employment. No evidence was

introduced that the counseling session would have any bearing on a disciplinary process within the Village of Maryville police department.

Other than the "counseling" incident, there was no evidence of any verbal or written reprimands ever having been issued by a sergeant. While there was no doubt that the sergeants possess in writing the ability to relieve an officer from duty and recommend suspensions, there was no evidence that either sergeant had done so. The sergeants of the Village of Maryville also maintain in writing the authority to recommend a suspension for a violation that would warrant punishment more serious than a reprimand. But again, there was no evidence that in fact either sergeant had ever done so.

Because the law requires specific examples of the exercise of supervisory authority to satisfy the rule that the supervisor actually possess authority to impose discipline or to effectively recommend discipline, I agree with the Illinois Labor Relations Board that this one instance is clearly insufficient to establish supervisory authority under the meaning of the Act.

The majority references the sergeants' ability to review the officer's requests for time off and for vacation as the primary exercise of supervisory power. The authority to direct a subordinate involves the function of overseeing operations or authority that indicates responsibility for the performance of a subordinate's work. *Village of Glen Carbon*, 8 Pub. Employee Rep. (Ill.) par. 2026, No. S-UC-91-102 (ISLRB June 19, 1992); *City of Lincoln*, 4 Pub. Employee Rep. (Ill.) par. 2041, No. S-RC-88-56 (ISLRB October 13, 1988). Examples of these functions include monitoring work actions, approving requests for leave or overtime, giving instructions on the manner and method of job performance, scheduling work hours, assigning work duties, and completing performance evaluations. *Village of Glen Carbon*, 8 Pub. Employee Rep. (Ill.) par. 2026, No. S-UC-91-102 (ISLRB June 19, 1992); *County of Lake*, 16 Pub. Employee Rep. (Ill.) par. 2036, No. S-UC-99-017 (ISLRB July 7,

2000); *Northwest Mosquito Abatement District*, 13 Pub. Employee Rep. (Ill.) par. 2042, No. RC-97-59 (ISLRB August 26, 1997); *Peoria Housing Authority*, 10 Pub. Employee Rep. (Ill.) par. 2020, No. S-RC-93-48 (ISLRB April 29, 1994). The Illinois Labor Relations Board has previously held that these functions, as well as any other function of direction, are not considered to be supervisory direction *unless there is evidence that the purported supervisor possesses significant discretion to affect the subordinate employee's employment in areas that fall within the scope of union representation–discipline, transfer, promotion, or hiring. County of Lake*, 16 Pub. Employee Rep. (Ill.) par. 2036, No. S-UC-99-017 (ISLRB July 7, 2000); *City of Bloomington*, 13 Pub. Employee Rep. (Ill.) par. 2041, No. S-UC-97-30 (ISLRB August 25, 1997); *City of Sparta*, 9 Pub. Employee Rep. (Ill.) par. 2029, No. S-RC-92-100 (ISLRB June 21, 1993). Specifically, the ability to review requests for time off and vacation has been deemed a routine, clerical function–a function not mandating the use of independent judgment. *City of Carbondale*, 3 Pub. Employee Rep. (Ill.) par. 2044, No. S-RC-264 (ISLRB June 2, 1987).

The majority also points to the sergeants' written authority to conduct performance evaluations. However, that ability does not in fact impact the terms and conditions of the patrol officers' employment. Performance evaluations that do not have any bearing upon an officer's pay or upon his employment status fail to amount to evidence of supervisory direction. *Village of Elk Grove Village*, 8 Pub. Employee Rep. (Ill.) par. 2015, No. S-RC-92-17 (ISLRB March 10, 1992), *aff'd, Village of Elk Grove Village v. Illinois State Labor Relations Board*, 245 Ill. App. 3d 109, 613 N.E.2d 311 (1993). Evidence at the hearing established that the sergeants' performance reviews in the past have not influenced the wage and employment conditions of the patrol officers. The officers were not on a structured merit pay system, and thus the evaluations had no impact upon the pay received. Evidence established that the evaluations remained in the officers' files, but there was no evidence that

16

any evaluation was actually reviewed and utilized in a determination by the Village of Maryville fire and police board when it came time for officer promotion.

For the foregoing reasons, I would find that the judgment of the State Panel of the Illinois Labor Relations Board was not clearly erroneous and that its order should be affirmed. For the reasons stated, I respectfully dissent.

NO. 5-08-0545

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE VILLAGE OF MARYVILLE, | ) | Petition for the Review of |
| | ) | an Order of the Illinois Labor |
| Petitioner, | ) | Relations Board, State Panel. |
| | ) | |
| v. | ) | No. S-UC-06-064 |
| | ) | |
| THE ILLINOIS LABOR RELATIONS | ) | |
| BOARD, STATE PANEL, and ILLINOIS | ) | |
| FRATERNAL ORDER OF POLICE | ) | |
| LABOR COUNCIL, | ) | |
| | ) | |
| Respondents. | ) | |

---

**Opinion Filed**:     June 29, 2010

---

**Justices**:     Honorable Stephen L. Spomer, J., with

Honorable Bruce D. Stewart, J., concurring, and

Honorable Melissa A. Chapman, J., dissenting.

---

**Attorneys for Appellant**     Stephen R. Wigginton, J. Brian Manion, Weilmuenster & Wigginton, P.C., 3201 West Main Street, Belleville, IL 62226

---

**Attorneys for Appellees**     Lisa Madigan, Attorney General, State of Illinois, Michael A. Scodro, Solicitor General, State of Illinois, Sunil Bhave, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601 (attorneys for Illinois Labor Relations Board, State Panel); Gary L. Bailey, Illinois Fraternal Order of Police Labor Council, 5600 South Wolf Road, Suite 120, Western Springs, IL 60558-2265 (attorney for Illinois Fraternal Order of Police Labor Council)